Gaston, J.
 

 This was an action of debt brought by, or in the name of, the. State of North Carolina, upon the relation and to the use of Isaac B. Braddy against Geraldus Shirley, Charles G. Hunter and David Barlow. The declaration averred that the defendants, by their writing obligatory, sealed with their seals and dated on the 1st day of March, 1836, acknowledged themselves to be held and bound unto the said State in the sum of $4000, with a condition underwritten, that if the above bounden Geraldus, who had been appointed constable of the county of Edgcomb for the year 1836, should well and faithfully execute his said office of constable by executing all warrants put into his hands, and should faithfully
 
 *601
 
 pay over all moneys collected by him, the said Geraldus, by suit or otherwise, according to the acts of Assembly in such case made and provided, then the above obligation to be void; and the declaration set forth that the said Geraldus had not complied with the condition aforesaid, but had broken the same in this, that he had in the said year 1836 collected the amount of a certain promissory note, which the relator had put into his hands as constable, and had refused to pay over the same to the relator upon demand therefor made, and also in this, that on the 10th of April, 1836, the relator had put into his hands, as constable as aforesaid, a certain other pro-. missory note, which he had foiled to collect, and which with due diligence he might have collected. The defendants craved Oyer of the alleged obligation and condition, and, this being had, pleaded the general issue, conditions performed and not broken. Upon the trial the plaintiff exhibited the alleged writing obligatory, and gave in evidence, that on the 1st of March, 1836, Henry Austin, Esquire, one of the justices of the Court of Pleas and Quarter Sessions of Edgcomb county, appointed the defendant Shirley a constable of said county for the year 1836; that this appointment was made out of court; that, thereupon, the defendant subscribed, sealed and delivered to the said Austin the writing aforesaid as their deed; that the same was received by the said Austin, and by him deposited with the clerk of the County Court for safe keeping, where it remained until the institution of this suit; and further offered evidence to establish the breaches assigned in the declaration. The counsel for the defendants prayed the court' to instruct the jury, that the (alleged) bond was a nullity, and an action could not be maintained upon it; but the court, rejecting this prayer, instructed the jury that in law the bond was not a nullity, and that an action might be maintained upon it, if they were satisfied that the defendant Shirley had failed on demand to pay over the money collected for Braddy, or had been guilty of negligence in not collecting it. The jury found a general verdict for the plaintiff on all the issues, and assessed his damages by reason of the breaches of the condition, to $222 82. A new trial was moved for by the defendants, but refused, and judg
 
 *602
 
 ment having been rendered for the plaintiff, the defendants appealed.
 

 By the act of 1833, ch. 5, (Revised Stat. ch. 24,) it is di. recte(j jn every county of the State, constables shall be elected, one in each captain’s district, by the inhabitants thereof, that returns of elections shall be made to the Court of Pleas and Quarter Sessions of each county; and that said court shall cause the constables elected to take the oaths of office in court, and take bonds from them with sufficient sureties, payable to the State of N. Carolina, and conditioned lor the faithful discharge of their duties. The act also provides, that where an election shall not be made by the inhabitants of a district, and where a vacancy may occur in the office of a constable by death-or removal out of the county, the court, seven justices being present, shall have power to appoint a constable; and it authorises suit to be brought upon bonds so taken in the name of the State, upon the relation and for the use of any person, who may be injured by the breach of the condition thereof. Under this act it cannot be questioned but that the appointment of the defendant Shirley as constable was utterly null, and that the magistrate, who received the bond of the defendants, had no authority as such to accept it. But it had been provided by an old act of 1741, ch. 24, that upon the death or removal of any constable out of the district for which he was appointed, it should'be lawful for the justices of the County Court in which such district should be, or any of them, to appoint and swear another 'person to be constable in the room and stead of the constable dead or so removing, who should act until the next County Court; and a doubt has been expressed whether this provision was abrogated or repealed by the act of 1833. The enquiry does not appear to us a material one, as respects the case before us, because the magistrate did not make an appointment until the next County Court, but undertook to make an appointment for the year 1836; and if this provision h.ad been in force, the appointment made and the proceedings upon it would have been liable to the same objection, because of an excess of authority, as, supposing
 
 *603
 
 the provision not in force, they are exposed to because want of authority. But we are satisfied that the provision in the act of 1741, was repealed by the act of 1833, because the latter contains an enactment, covering the whole ground of this provision, and making a different disposition in relation to the subject matter of it.
 

 The question of law presented by the case is, has there-been a delivery of this alleged bond? If there has not been, the instrument declared on was not the deed of the defendants. There has not been a delivery, unless the instrument has been accepted by some authorised agent <}f the State, .or unless in law its acceptance can be presumed.
 

 The State has undoubted capacity to receive a conveyance or an obligation; and this capacity can only be exerted through the medium of authorised agents. The authority, however, of these agents may either be expressly conferred, or may be incidental to other powers, and therefore comprehended within them. The cases of
 
 Dugan
 
 v.
 
 United States,
 
 3 Whea. 172, and
 
 U. States
 
 v.
 
 Tingey,
 
 5 Peters 175, which have been cited for the plaintiff, do but establish this doctrine; and upon principle as well as authority, we have no hesitation in recognising it thoroughly. But the magistrate who received this bond in behalf of the State acted wholly without authority. He not only had no express delegation of power to take it, but he was acting altogether
 
 without his official sphere
 
 in relation to the subject matter. His acceptance of the instrument imparted to it no more validity, than it would have received from the acceptance of any, the hum-, blest, individual in the land. It is of the very essence of regulated liberty, that the moment one entrusted with authority steps beyond its limits, his acts become the acts of a citizen, and are not those of a public agent.
 

 The want of a precedent authority may, however, be supplied by a subsequent ratification. But none such is shewn in this case. The clérk of the County Court is entrusted with the keeping of the records of the court and other public documents; but he cannot make an instrument a record or public document, which is not such, by placing it with the files among the records of his office. The suit is brought
 
 *604
 
 in name of the State of North Carolina, but that name 'is used by an individual, as a relator, for his own benefit, tip-on the supposition that this instrument has been taken under ^ pU^.[jc authority; and, whether it was so taken or not, is the very question to be tried. But if the action had not been brought at the instance of a relator — if it had been instituted by the State through the Attorney General — unless it was shewn that
 
 he
 
 had authority to ratify the act of the individual, who, without authority, took the instrument as a bond — .
 
 this
 
 would not have been a ratification by the State. The will of the State is only to be known, when declared through those appointed to declare it.
 

 The remaining enquiry is, does the law presume an acceptance? The delivery of a deed to a third person for the use of a grantee is generally held to be a delivery to the grantee, until he express his dissent. This rule is founded upon the presumption that men do not refuse benefits, and therefore the law infers an acceptance without requiring proof thereof. How far this rule is applicable to bodies politic —and especially to those of the highest dignity, States and sovereignties — which, act only through the mediumof others, and these ordinarily invested with special powers and required to act under these powers with prescribed formalities— on principle atleast is not so clear. In the case of the
 
 Bank of the United States
 
 v.
 
 Dandrige and others
 
 (12 Wheaton 64) Chief Justice Marshall held that an instrument purporting to be a bond, given by a cashier and his sureties for the
 
 faithful
 
 performance of his duties to the institution, notwithstanding evidence that upon the execution of this instrument he was introduced into the bank as cashier and acted as such after-wards, and that this instrument was deposited among the muniments of the bank, as the cashier’s official bond — was not the deed of the defendants, because not accepted by a formal resolution of the directors. His brethren or a majority of his brethren on the Supreme Court Bench dissented from this opinion, holding that the rule of presuming assent to benefits tendered applied to corporations as well as to individuals, or at all events that their assent might be inferred from evidence short of that which would be required io bind them to onerous obligations. There are also
 
 *605
 
 decisions of courts of great respectability, in which, out evidence of formal acceptance, obligations made rectly to a State, or to the United States, for the payment oí money or the performance of other duties due to them in their corporate capacity, have been upheld as bonds on the ground of presumed acceptance. Among these, one of the strongest is that in the case of
 
 the United States
 
 v.
 
 Maurice and others, 2
 
 Brock. 96, in which Chief Justice Marshall, reluctant as he avowedly was to give in to any laxity of principle, because of apprehended inconvenience, held an instrument executed by one, irregularly appointed to office, for securing the faithful collection and disbursement of public moneys, binding on the officer and his sureties. It would
 
 seem,
 
 therefore, that there are contracts and engagements so plainly and unequivocally beneficial to the State, that the law will not, in regard to them, require evidence of formal acceptance; but it is manifest that in the application of this rather latitudinous doctrine, it is incumbent on the courts to exercise great caution, lest they should unwittingly take upon themselves a functiou confided by the fundamental law to a different part of the government, the function of determining what is and what is not for the good of the State.
 

 The present case does not call upon us to draw this line of partition. The instrument before us does not profess to be made for the benefit of the State
 
 as such.
 
 It is avowedly made to secure the interestsof all persons, who shall entrust the defendant Shirley with the collection of debts, and made to the State as a trustee for these persons. True, the State may be said in common parlance to have an interest in the faithful performance of these duties, because the performance of them is for the advancement of right. But the State has not an interest therein in its proper character,
 
 as a State.
 
 If individuals may, without permission, thus make the State their trustee, what limits can be set to the exercise of this liberty? Why may not every one — every firm — every voluntary association — every corporate body — nay, every foreign State — should they so chose — take engagements for the protection of their interests in the name of the State? If this be
 
 *606
 
 done, is it not manifest that the State may become involved in responsibilities and duties, wholly alien from the'legitimate purposes of goverment, and its honored name may be jodied about in the contests of private litigants, like the John Doe and Richard Roe in an action of ejectment? But there is a yet stronger objection to the presuming of an acceptance of this instrument by the State. By'its constitutional organ, the Legislature, the State has declared when and through whose agency it will accept a trust of this character —who may take, and in what cases they may take, a bond so payable and so conditioned as is the instrument now under consideration. This expression of the public will must be understood by us, whose duty it is to give it full effect as a denial of the power, thus specially delegated, to all other persons and in all other cases. Against
 
 this
 
 denial no presumption can be entertained.
 

 It has been insisted, in argument for the plaintiff, that the precise ground on which we put our decision was not taken on the trial — that the objection made by the defendants was not to the incomplete execution of the instrument, but to its validity, supposing it executed. There is some foundation for this criticism — the point is not made as distinctly, as it might have been presented. But nevertheless it manifests itself upon the case and cannot be overlooked. Objection was taken to the bond as such
 
 upon the general issue
 
 — because of the circumstances under which its alleged execution took place — and the defendants prayed of the court to instruct the jury to find upon this issue that it was not their deed. But instead of granting this prayer, the court instructed the jury, that upon the evidence offered the plaintiff had maintained the issue on his part and was entitled to recover. If in
 
 this
 
 there was error, we are bound to reverse the judgment.
 
 Grist
 
 v.
 
 Backhouse,
 
 4 Dev. & Bat. 362.
 

 • It is not for us
 
 to say or
 
 intimate, whether the relator has any remedy in any other court or in any other form. But it is our opinion that as the facts appear in this record there cannot be a judgment at law upon this instrument, as the bond of the defendants.
 

 Per Curiam, Judgment reversed and a
 
 venire de novo
 
 awarded.